```
01
02
03
04
05
06
```

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| LAURA L. BOTHMAN, | ) | CASE NO. C04-1608-RSM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY |
| JO ANNE B. BARNHART, | ) | DISABILITY APPEAL |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Laura L. Bothman proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance benefits (DI) under Title II of the Social Security Act after a hearing before The Honorable Dan R. Hyatt, Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on March 15, 1952 and has a high school education. Her prior work experience was as a dental lab technician. Ms. Bothman originally filed an application for benefits on January 5, 2000, alleging disability beginning on January 1, 1997. The claim was denied on March 30, 2000 and she did not seek further review of that determination. Therefore, that denial remains the final determination of the Commissioner on that claim. Ms. Bothman subsequently

filed another application for benefits on April 18, 2001, alleging disability since January 1, 1997. The ALJ inferred this as a request to reopen the prior claim, but did not find sufficient ground to reopen the prior application. Therefore, the earliest date for which the plaintiff's disability can be considered is March 31, 2000. Plaintiff has not assigned error to this determination.

The plaintiff's earnings show sufficient quarters of coverage to remain insured only through September 30, 2002. Therefore, a showing of disability must be made on or before that date. (AR 15)

Following a hearing (AR 565-620), the ALJ issued a decision finding the plaintiff not disabled. (AR 14-25) Plaintiff appealed the ALJ's decision to the Appeals Council. After considering additional evidence submitted by the Plaintiff, the Appeals Council issued an Order on March 31, 2004 denying the request for review. (AR 5-7.)  As a result, the ALJ's decision became the final decision of the Commissioner. Plaintiff appealed the Commissioner's decision to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's depressive disorder, lumbar spine degenerative disc disease and alcohol abuse to be severe impairments. (AR 16, 19, 24) Her carpal tunnel, cervical spine condition and fibromyalgia were found to not be severe impairments. (AR 19) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's medically determinable impairments do not meet or equal a listed impairment. If a claimant's impairments do not meet

or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ assessed plaintiff's RFC and found her able to perform her past relevant work as a dental lab technician. Because the ALJ's finding at step four required a finding of "not disabled," the ALJ did not need to proceed to step five, where the burden would shift to the Commissioner to demonstrate that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. However, the ALJ noted that there was "some evidence" that the plaintiff was limited to simple, repetitive tasks and, if so, would not be able to perform her past work. (AR 22), Therefore, the ALJ asked the vocational expert to identify other work that could be performed within these additional limitations, and found that the plaintiff could make a vocational adjustment to light assembly work. The plaintiff's motion to strike the vocational expert's testimony for lack of foundation was denied[1]. (AR 23, 604)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and his findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

---

[1] The plaintiff's hearing memorandum on this issue is set forth in the record at AR 135-137.

Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.

Plaintiff contends that the ALJ erred in failing to consider impairments of her right shoulder as well as failing to incorporate all mental limitations, and therefore erred in determining her residual functional capacity. Plaintiff argues that the ALJ erred in concluding that the right shoulder, carpal tunnel and mental limitations were not severe, and further argues that all limitations, including those found to be non-severe, should be considered in determining plaintiff's residual functional capacity. Plaintiff urges that the vocational expert's opinion has no evidentiary value because it was based on an incomplete hypothetical, and lacked foundation because it was not sufficiently specific with regard to the number of jobs available in the national and regional economy for the position which plaintiff is said to be capable of performing. Finally, the plaintiff contends that the ALJ failed to properly develop the record.

The Commissioner urges affirmance, contending that the decision was supported by substantial evidence.

## **CONSIDERATION OF UPPER EXTREMITY IMPAIRMENTS**

The plaintiff contends that the ALJ erred in failing to address her limitations involving her right shoulder. The ALJ did reference the difficulty the claimant had with her right shoulder in early 2000 secondary to a rotator cuff injury, concluding that the condition was mild and the claimant continued to improve with conservative treatment. The ALJ cites the records of Dr. Ferrell, who treated plaintiff for low back pain on February 18, 2000. Dr. Ferrell noted the presence of the right rotator cuff tear "being scheduled for surgery by Dr. Hering in Hood River, Oregon" (AR 295). Dr. Ferrell ruled out any lifting with the right shoulder until the shoulder surgery was accomplished. (AR 296). The ALJ also cited the records of Michael B. Wyman MD, who examined the right shoulder on April 4, 2000 (AR 316-319) . Dr. Wyman noted that surgery

01  had been recommended and questioned whether surgery was necessary, in light of her diminishing
02  pain. On May 19, 2000, Dr. Wyman injected the shoulder with a long acting steroid and local
03  anesthetic, and commented in October 2000 that Ms. Bothman continued to have "some shoulder
04  and elbow symptoms that seem to be more tendinitis type symptoms". (AR 319) There are no
05  records of any additional treatment provided by Dr. Wyman for the shoulder after that date and
06  he imposed no limitations related to the shoulder condition. A review of the records shows that
07  the surgery was never conducted.

08        The plaintiff also contends that the ALJ erred in concluding that the carpal tunnel condition
09  resolved. The ALJ noted the onset of right hand pain and numbness, as well as the resolution of
10  the symptoms with the plaintiff's right carpal tunnel release in October 16, 2000. (AR 18) The
11  ALJ gave "very close attention" (AR 19) to the report of Dr. Kaiser, a treating physician, who
12  felt Ms. Bothman would have significant limitations in using her upper extremities. However, the
13  ALJ found the opinion of Dr. Ochoa at the Oregon Nerve Center to be more persuasive, being
14  based on nerve conduction testing rather than the self-reported symptoms of the plaintiff which
15  the ALJ found to be not totally reliable. Dr. Ochoa reported that the carpal tunnel release surgery
16  resolved the numbness in Ms. Bothman's right wrist, and that she had normal strength sensation
17  and reflexes in both upper and lower extremities. (AR 486) Dr. Ochoa attributed most if not all
18  of her symptoms to depression. (AR 488).

19        Where not contradicted by another physician, a treating or examining physician's opinion
20  may be rejected only for "clear and convincing" reasons. " *Lester v. Chater*, 81 F.3d 821, 830
21  (9th Cir. 1996). However, if contradicted, a treating or examining physician's opinion may be
22  rejected for "'specific and legitimate reasons' supported by substantial evidence in the record" *Id*.
23  at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

24        Here, Dr. Kaiser's opinion was contradicted by another examining physician, Dr. Ochoa.
25  Indeed, Dr. Ochoa might properly be considered a treating physician, whose opinion would be
26  entitled to the same weight as Dr. Kaiser. Even if not, where the opinion of the treating physician

is contradicted, and the non-treating physician's opinion is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala,* 53 F.3d 1035, 1042 (9th Cir. 1995). It is the sole province of the ALJ to resolve this conflict. *Id.* The ALJ gave appropriate weight to Dr. Kaiser's opinion, but rejected it in favor of the opinion by Dr. Ochoa, which was based on a more firm foundation.

There was no error in the ALJ's lack of inclusion of right upper extremity limitations in considering the plaintiff's disability, or in finding that these conditions were not severe impairments. The ALJ did not err in failing to develop the record further concerning these impairments.

## **CONSIDERATION OF MENTAL LIMITATIONS**

The plaintiff also contends that the ALJ erred in not incorporating additional mental limitations as part of plaintiff's residual functional capacity.

The ALJ found that plaintiff's depressive disorder was a severe impairment. Using the Psychiatric Review Technique form (PRTF), the ALJ concluded that the plaintiff had mild limitations in daily living activities and social functioning with no extended episodes of decompensation. She had moderate difficulty in concentration, persistence and pace with respect to verbal memory only, and so was limited to occasional use of verbal memory, with unimpaired visual memory. The ALJ asked vocational expert Gail E. Young to consider a hypothetical person's ability to perform Ms. Bothman's past work as a dental lab technician with certain limitations that included occasional resort to verbal memory, and unimpaired visual memory (AR 22, 591-592 ). Ms. Young testified that the person would be able to perform the plaintiff's past work. Because there was "some evidence" that Ms. Bothman may be limited to only simple, repetitive tasks, the ALJ asked the vocational expert to consider the effect of this additional limitation in a second hypothetical. Ms. Young testified that the individual could not perform Ms. Bothman's previous work as a dental lab technician, but could make a vocational adjustment to

01 light assembly work. (AR23, 593)

02 The plaintiff argues that it was error for the ALJ to rely on the opinion of Linda Conaway, Ph.D. regarding plaintiff's mental limitations because Dr. Conaway did not prepare a functional capacity assessment to make this determination. Rather, plaintiff argues, the limitations imposed by individuals who prepared assessment forms, including Dr. Sjodin [2], Dr. Carrington[3] and Dr. Clifford, should have been relied on.

07 Dr. Conaway performed a neurobehavioral status examination of the plaintiff on January 17, 2001, administering a number of psychological tests. The plaintiff was referred to Dr. Conaway by her treating doctor, Dr. John Kaiser. In analyzing the test results, Dr. Conaway noted that they were a valid and reliable indicator of the client's abilities at that time. (AR 324) Dr. Conaway noted that the plaintiff was "having some significant problems with her verbal memory which is much poorer than her visual memory. She also exhibits problems with attention." (AR 326).

14 Dr. Lisa Sjodin examined the plaintiff on July 23, 2001 as part of a psychiatric evaluation by the Social Security Administration. Dr. Sjodin likewise did not complete a functional capacity assessment, but found plaintiff to have adequate concentration, the ability to persist well, and good pace. (AR 361) Dr. Sjodin noted that Ms. Bothman had the ability to perform detailed and complex tasks from a cognitive standpoint. Dr. Sjodin concurred with Dr. Conaway's observation that plaintiff demonstrated some difficulty with memory during psychological testing. Dr. Sjodin assessed the plaintiff as pleasant and capable of interacting well with co-workers, with some difficulty predicted in public situations due to her "generally socially reclusive nature", but finding plaintiff to be "cognitively intact enough to be able to accept instructions from supervisors". Ms.

---

[2] Dr. Sjodin actually did not complete an assessment form, as such, either.

[3] The Plaintiff refers to the individual whose signature appears as "LJ Carlington" on the September 22, 2001 assessment form, as a medical doctor. However, the record does not support a conclusion that this individual possesses such professional qualifications.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01  Bothman was deemed able to deal with the "usual stressors encountered in competitive work".
02  (AR 362). Dr. Sjodin opined that approximately four times a year, Ms. Bothman's depression
03  would exacerbate her ability to perform work activities.
04      On September 22, 2001, Thomas Clifford, Ph.D., performed a psychiatric review of the
05  plaintiff's file, assessing the plaintiff's mental residual functional capacity. (AR 418). The plaintiff
06  argues that the ALJ should have incorporated all of these mental limitations as part of plaintiff's
07  residual functional capacity, and should have included them in the hypothetical posed to the
08  vocational expert.
09      The ALJ has the responsibility of determining Plaintiff's residual functional capacity. See,
10  20 C.F.R. §§404.1546,416.946; SSR 96-5p. Therefore, no doctor's opinion or testimony is
11  conclusive on this issue. See SSR 96-5p. In assessing Plaintiff's residual functional capacity, the
12  ALJ's task is to consider the whole record and explain how she or he weighs the medical evidence
13  and testimony, making a final determination based on the evidence as a whole. The Court may not
14  substitute its judgment for that of the ALJ. The ALJ's findings must be upheld if they are
15  supported by inferences reasonably drawn from record evidence. *Batson v Commissioner*, 359
16  F.3d 1190, 1193 (9th Cir. 2004)
17      The ALJ's assessment of Plaintiff's mental limitations is supported by substantial evidence.
18  The ALJ relied more heavily on the assessments of Dr. Conaway and Dr. Sjodin, both of whom
19  were examining physicians, as opposed to the DDS consultants who are not examining doctors.
20  The ALJ considered the DDS psychological report, but found that the evidence as a whole did not
21  support moderate (as opposed to mild) limitations in social functioning and noted that the
22  plaintiff's daily activities supported a conclusion that she was capable of more than simple,
23  repetitive tasks. The ALJ accorded the proper weight to the DDS consultant opinion as coming
24  from an expert in the evaluation of the medical issues in disability claims, but who is also a source
25  that has never examined the plaintiff whose case is being decided. As long as the opinion is
26  considered and the amount of weight accorded to it is explained, the ALJ is not bound by the

finding of that consultant. 20 CFR §404.1527(f)(2), SSR 96-6p.

The plaintiff, however, contends that the ALJ should have incorporated <u>all</u> mental limitations set forth in Dr. Clifford's DDS assessment, because they were set forth in categories that Dr. Conaway failed to address or consider. The contention is not well taken. The ALJ was not bound by these findings, but only obliged to consider them and explain the weight accorded to them. The ALJ found that the evidence as a whole did not support the more limited assessment of the plaintiff's functioning that the DDS report would indicate, citing the plaintiff's benign presentation at examination, the mild clinical findings, and the fact that the plaintiff's daily activities evidenced a capability of performing more than simple, repetitive tasks. (AR 21) The ALJ appropriately gave more weight to Dr. Conaway's report as based on testing and interviewing the plaintiff. There is no evidence that either Dr. Conaway or Dr. Sjodin were constrained in listing plaintiff's full mental limitations by the expression of those limitations in a report format rather than by utilizing any particular form.

The ALJ's assessment of plaintiff's mental limitations was supported by substantial evidence.

## **CREDIBILITY DETERMINATION**

The Plaintiff suggests that the ALJ committed error in discounting her testimony because she was not seeking mental health treatment. This argument over-simplifies the ALJ's finding about the credibility of Plaintiff's complaints. Credibility determinations are the province of the ALJ. *Fair v Bowen*, 885 F.2d 597, 604 (9th Cir., 1989) The ALJ may use "ordinary techniques of credibility evaluation" to evaluate the Plaintiff's testimony and, if specific, clear and convincing reasons are provided for rejecting the testimony, the ALJ will be upheld. *Thomas v Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing. *Id.* Factors that may be considered in weighing the Plaintiff's credibility include inconsistencies within her testimony, or between the testimony and her conduct, daily activities, work record and other testimony. *Id.,* 958.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01    The ALJ noted that the Plaintiff testified at hearing that she was currently receiving
02 psychological treatment, but when pressed, she admitted that she had not set further appointments.
03 (AR 21).  The ALJ noted that the Plaintiff was able to pet sit, do artwork such as painting and
04 carving, was a "bird expert" on the Internet, and do a range of light household chores, despite
05 allegations of disabling pain.  She had not had any significant treatment for her back pain.  Her
06 benign presentation at examination, mild clinical findings, and daily activities were cited by the
07 ALJ, along with her "rather cavalier approach to treatment for her back condition and depression",
08 indicating that her symptoms "are likely not as severe as she has alleged".  The ALJ did not
09 entirely reject plaintiff's testimony, but found it not fully credible regarding her self-description of
10 her limitations.  An inadequately or unexplained failure to follow prescribed treatment can form
11 the basis for finding a lack of credibility. *Fair v Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)

12    The ALJ's credibility findings regarding plaintiff in this case are sufficiently specific to
13 conclude that they are supported by substantial evidence, and should not be disturbed.

14              **HYPOTHETICAL POSED TO VOCATIONAL EXPERT**

15    In order to assess the plaintiff's ability to work, the ALJ posed two hypotheticals to the
16 vocational expert.  Both assumed an individual with the ability to lift 20 pounds occasionally, 10
17 pounds frequently, the ability to walk up to one-half mile and the necessity of sitting and standing
18 at will, which were physical abilities supported by substantial evidence, as described above.  The
19 first hypothetical assumed an individual with unimpaired visual memory, but the ability to only
20 occasionally use verbal memory.  The vocational expert testified that an individual with this
21 residual functional capacity would be able to perform the plaintiff's past work as a dental lab
22 technician.  (AR 592) The second hypothetical described a person who would additionally be
23 limited to simple, repetitive tasks.  The vocational expert testified that such an individual could not
24 perform the plaintiff's past work, but would have transferrable skills that would allow the
25 performance of  light assembly jobs, of which about 16,000 jobs were available regionally and
26 about 1,700,000 nationally. (AR 593) When asked by plaintiff's counsel how many of these jobs

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

were part-time, the expert replied that "very few" were part-time. (AR598).

The plaintiff argues that the ALJ did not include in the hypothetical all of the limitations found by the ALJ to be present, specifically citing the absence of difficulty with concentration, persistence, and pace with respect to verbal memory. The plaintiff's suggestion that the hypothetical was defective is not well taken. The second hypothetical assumed a limitation to simple, repetitive tasks, which has been held sufficient to describe deficiencies in concentration, persistence or pace. *Howard v Massanari,* 255 F.3d 577, 582 (8th Cir. 2001) A hypothetical need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately describe the plaintiff's impairments. *Id.* The ALJ need only include impairments in a hypothetical posed to a vocational expert that are supported by substantial evidence in the record. *Osenbrock v Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001).

The plaintiff assigned error to the failure to include other limitations such as "markedly limited in remembering very short and simple instructions and carry out detailed instructions; moderately limited in understanding and memory, sustained concentration and persistence, interacting with the public or getting along with coworkers; and completing a workday without psychologically based interruptions or work at a consistent pace without unreasonable numbers or lengths of rest periods". (Plaintiff's Opening Brief, page 14-15). These limitations appear only in the DDS consultant's report, and have not been adopted by any of the plaintiff's treating or examining doctors. As stated above, the ALJ provided specific reasons, well supported in the medical records, for not accepting these limitations. The hypotheticals posed to the vocational expert were supported by substantial evidence.

## **FOUNDATION FOR VOCATIONAL TESTIMONY**

The plaintiff asserts that the testimony as to the availability of light assembly work lacked foundation. Plaintiff argues that the 16,000 regional jobs and 1,700,000 national jobs said to be available include both full time and part time positions. The vocational expert, however, clarified that "very few" of these jobs would be part time, but could not state a specific number. (AR 598)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01       In order for a social security claimant to be found capable of doing work other than past
02 relevant work, the claimant must be found capable of doing work which exists in the national
03 economy, existing in "significant numbers" either in the region where the claimant lives or in
04 several other regions of the country. 42 USCA §423(d)(2)(A), 20 CFR §404.1566(a).  There is
05 no precise boundary between a significant and an insignificant number of jobs for the purpose of
06 determining whether a plaintiff can perform work.   *Hall v Bowen*, 837 F.2d 272, 275 (6th Cir.
07 1988).   The phrase "significant numbers" is utilized so as to "preclude from the disability
08 determination consideration of a type or types of jobs that exist only in very limited number or in
09 relatively few geographic locations in order to assure that an individual is not denied benefits on
10 the basis of the presence in the economy of isolated jobs he could do". *Id.*

11       Plaintiff attempts to argue that the ALJ limited the number of available light assembly jobs
12 to 300.  This misconstrues the testimony of the vocational expert, who agreed that 300 specific
13 jobs existed that would fit within the parameters of the second hypothetical, but who also testified
14 as to the availability of 16,000 regional and 1,700,000 national jobs, "very few" of which were part
15 time.  (AR 614)  Plaintiff's assertion that the expert testified that these jobs included "many
16 different categories of assembly work including different lifting capacities or skills, etc (Plaintiff's
17 Opening Brief, page 16) plainly misconstrues the expert's testimony, who testified that they all
18 would be either sedentary or light. (AR 599) The vocational testimony did not lack foundation,
19 and was properly admitted.

20 <center>**PLAINTIFF'S ABILITY TO WORK**</center>

21       The first vocational hypothetical did not restrict plaintiff to simple, repetitive tasks.
22 Neither Dr. Conaway nor Dr. Sjodin, the two examining doctors, imposed such a restriction, so
23 this hypothetical was supported by substantial evidence.  Based on this hypothetical, the vocational
24 expert testified that plaintiff would be able to perform her past work as a dental lab technician.

25       The second hypothetical, which the ALJ posed in order to give the plaintiff the benefit of
26 the doubt, include the additional limitation of simple, repetitive tasks.  Dr. Sjodin found that the

plaintiff had the ability to perform "detailed and complex tasks from a cognitive standpoint" (AR 362) and Dr. Conaway likewise imposed no such restriction. Nevertheless, even with this restriction, the plaintiff was found capable of performing the work of light assembly, which existed in significant numbers existing in the regional and national economy.

The ALJ's finding that the plaintiff was not disabled is supported by substantial evidence.

## **FAILURE TO DEVELOP THE RECORD**

The plaintiff devotes a section of her brief to arguing that the ALJ did not fully develop the record in various regards. This argument is duplicative of the plaintiff's arguments that the ALJ failed to consider all physical and mental impairments, and that the vocational testimony lacked foundation, which argument has been discussed previously in this Report and Recommendation. "[A]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. " *Mayes v Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) Here, no such ambiguity or inadequacy mandated the ALJ to obtain further evidence.

Plaintiff's suggestion that the ALJ erred by failing to ask a doctor or vocational expert "of the significance of the various limitations" is not well taken. The ALJ did elicit the opinion of the vocational expert regarding the impact of the limitations that were supported by substantial evidence on plaintiff's ability to work. As to inquiring of the medical doctors, such testimony would have been outside their expertise, since it is the province of the ALJ to determine the Plaintiff's capacity to work.

## **CONCLUSION**

The ALJ's decision finding plaintiff not disabled must be AFFIRMED. Plaintiff failed to establish that the Commissioner's final judgment is unsupported by substantial evidence. A proposed order accompanies this Report & Recommendation.

The Clerk is directed to send copies of this Order via electronic notification to each of the following: to counsel for Plaintiff(s)/Petitioner(s), to counsel for Defendant(s)/Respondent(s), to

01 the Honorable Ricardo S. Martinez, and to Judge Theiler.  If electronic notification is not available

02 for a given party, the Clerk is directed to send via first-class mail a copy of this Order to that party.

03        DATED this  1st  day of April, 2005.

04                             s/ Mary Alice Theiler
                              United States Magistrate Judge

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -14